IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

MIDDLE DISTRICT—HARRISBURG 1877.

## Romig's Appeal. Estate of Peter Haffly, deceased.

1. Although receipts are not indispensable, yet it is the imperative duty of registers, auditors, and the judges of the Orphans' Courts, to require some distinct and definite form of proof to establish the validity of demands against decedents' estates.

· 2. In the administration account of the executors of H. one hundred and sixty-one items of credit were claimed, for one-half of which no vouchers were filed with the register or auditor. The auditor and court allowed the executors $400, the amount of sundry small sums expended by them, without taking receipts or credits therefor. No right to this sum had been asserted in the administration account. This allowance was made under the testimony of one of the executors, whose recollection of the expenditures was vague and uncertain, and who had kept no account whatever of any of the items entering into this amount. *Held*, that this allowance was erroneous.

May 8th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Appeal from the Orphans' Court of *Lancaster county:* Of May Term 1877, No. 108.

This was the appeal of Reuben Romig, guardian of Simon Haffly, a minor grandson and legatee of Peter Haffly, deceased, from the decree of the court confirming the report of the auditor upon the administration account of the executors of said Peter Haffly, deceased.

The facts are stated in the opinion of this court.

The only question passed upon by this court was that raised by the following exception :—

(235)

" The auditor committed an error by allowing the accountants a credit of $400, for small items paid out, without taking receipts, for which no credit was asked by them in their account, but allowed by the auditor solely upon one of accountants' own testimony (to whose examination the exceptant objected), upon a new item of credit, which did not appear in the account—said accountant being called by himself to prove said item of credit."

The court, Patterson, A. L. J., dismissed this exception, and from this decree this appeal was taken.

*A. J. Eberly*, for appellant.—The auditor credited the executors with the amount of sundry small items expended by them, without taking receipts or taking credit in their account, which one of the accountants swears amounted to $400, more or less. This evidence is too indefinite and unsatisfactory to set aside the safeguards provided for the protection of decedents' estates. If the oath of the accountant is sufficient, the purpose for which money was expended cannot be inquired into under like circumstances. The evidence was not sufficient to supply the want of vouchers: Act 15th of March 1832, sect. 29, Pamph. L. 143 ; Mylin's Estate, 7 Watts 64.

*William R. Wilson*, for appellees.—The executor being called to the stand by the appellant was competent as a witness in his own behalf: Act 15th April 1869, Pamph. L. 30 ; Mylin's Estate, *supra.*

Mr. Justice Woodward delivered the opinion of the court, May 21st 1877.

One hundred and sixty-one items of credit were claimed in the administration account of Peter Haffly's executors. For a large proportion of these — perhaps for one-half of them — no vouchers were filed with the register or produced before the auditor. Among the items was one for " cash paid sundry small payments, $40," which the first report allowed. In the second report a further allowance of $360 was made to the executors, as " the amount," in the language of the auditor, " of sundry small sums expended by them without taking receipts or credits therefor." No right to this last sum had been asserted in the administration account or at the first audit. The allowance was made under the testimony of Peter Haffly, Jr., one of the executors, who was called as a witness by the counsel for the exceptant. In answer to an inquiry regarding the " sundry small payments of $40," Mr. Haffly said : " These were small sums for which I had no receipts and no memorandums. I guessed it was $40 ; it might have been more or less. I thought I had spent that during the last year for the estate. I do not know how much of the $40 I spent for my own use ; I do not know that any was spent for my own use." To a question by his own counsel, as to his knowledge and recollection of the amount of money he

and his co-executor had paid out in small items in the course of the administration, for which he had taken no account, the witness replied: "Any how, about $400." He added: "It may be less and it may be more; I kept no memorandum of it."

It is provided, by the 29th section of the Act of the 15th of March 1832, that every register, before he shall allow the accounts of any executor or administrator, shall carefully examine the same, and require the production of the necessary vouchers or other satisfactory evidence of the several items contained in them. Receipts are not indispensable, but it is the imperative duty of registers, auditors, and the judges of the Orphans' Courts, to require some distinct and definite form of proof to establish the validity of demands against dead men's estates. It may well happen that small sums may be expended for travelling bills, official fees, or the services of domestics, or even in the discharge of trifling debts, where it would be unreasonable to insist on the production of written evidence. But in some way the want of the written evidence must be supplied. Accounts should be kept, if for no other purpose, to indicate at least accuracy and good faith. There is no question as to the competency of Mr. Haffly as a witness, for he was called by the adverse party. His competency, however, did not give the effect of adequate evidence to vague conjectures that did not even profess to rest on his recollection of a single concrete fact. It was said by Mr. Justice ROGERS, in Mylin's Estate, 7 Watts 64, that while cases may arise where the Orphans' Court, in the exercise of a reasonable discretion, may supply the want of a regular voucher by the oath of a guardian or administrator, yet "it must be done with great caution. It is a kind of evidence on which little reliance should be placed; it should be resorted to with great delicacy; and even then should be sustained by some corroborating proof." In this case not only were vouchers entirely wanting, but no account of any of the items entering into an aggregate sum so significant as $400 had been kept by the executors. More than that, the parol testimony did not specify a single instance in which a payment had been made. There was no proof even of the existence of demands alleged to have been discharged. The decision in the court below was founded on what was admitted to be merely the accountant's guess. A rule that would subject the estates of decedents to the hazard of depletion on such evidence as this, would be as unsafe as it would be unwise. The allowance to the executors, under the facts shown by the record, was wholly indefensible.

It is ordered and adjudged that so much of the decree of the Orphans' Court as granted an allowance to the executors of Peter Haffly of $40 in the first, and $360 in the second auditor's report, be reversed, at the costs of the appellees. The residue of the decree is affirmed.