# Estate of Mary Moore, Deceased. Appeal of Clara C. McClure.

*Contracts of decedent—Auditor's conclusion from undisputed testimony—Review.*

There is a clear distinction between a distinct finding of fact by an auditor, concurred in by the court below, to which the effect of a verdict of a jury will be given by an appellate court, and a conclusion of law or deduction from undisputed testimony which would raise the question as to whether or not there was sufficient evidence to go to a jury, as to which the appellate court can clearly judge, and by which it will not be bound.

The finding of the auditor in the case at bar belongs to the latter class, because, taking the testimony before him as true, there was no contract between the decedent and the claimants for the increased compensation demanded.

*Contracts of decedent—Extras—Mere expressions not a contract.*

There is no more fruitful source of dispute than claims for extras, and where they are superadded to claims upon an express contract for services of the same or similar kind they should be made out clearly and explicitly before they are allowed.

In the case at bar there was no dispute as to the original contract, but claimants based their claim for extra compensation upon expressions and indications of belief by decedent that they (the claimants) were not sufficiently paid; in the testimony upon which the auditor based his conclusion as to his finding of a contract, every element of a contract is wanting.

Argued Nov. 22, 1899.   Appeal, No. 71, Oct. T., 1899, by Clara C. McClure, from decree of O. C. Chester Co., in distribution of the estate of Mary Moore, deceased.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ.   Reversed.   Opinion by BEAVER, J.

Exceptions to auditor's report.   Before BUTLER, J.

It appears from the auditor's report that decedent entered the family of the Misses Morton as a boarder, and so continued to the time of her death.   When she came to them she was advanced in years and suffering from consumption of the joints. Her condition was taken into consideration by the Misses Morton in determining what sum she should pay for her boarding, washing and nursing, and the sum of $6.25 per week was agreed upon.   This sum was regularly paid to the time of her death, and was in excess of the usual rates for boarding in the neighborhood.   Her ailments increased in degree as she continued with the claimants, and the services rendered by them as time passed on were of the same kind although more exacting. In the distribution of the estate the Misses Morton presented a claim for additional compensation for their increased services, and were awarded $707.02.

The auditor found the above as facts; also that during her lifetime, referring to the claimants, decedent had made several remarks to the effect that "they were not half paid," "that the Misses Morton would be well paid for what they did," and "that she wanted the Misses Morton well paid, and wanted to fix it so they would be paid;" that during her lifetime she had given a note for $1,000 payable to the order of the claimants; that suit was brought on the note after decedent's death, and that one of the claimants admitted that it had been given as a gift.   The auditor found as a fact that decedent did bind herself by an express promise to pay the claimants such an amount for the increased care in nursing and waiting on her, beyond the contract sum, as the services so rendered were reasonably

worth, for the period of two years and two months immediately preceding her death. That such increased compensation determined by the usual and ordinary sum paid nurses in the neighborhood would amount to $10.00 per week.

Exceptions filed to the report of the auditor were dismissed by the court, and the auditor's report in distribution awarding to the claimants the sum of $707.02 was confirmed. Clara C. McClure, residuary legatee, appealed.

*Errors assigned* were (1) in dismissing the first exception to the report of the auditor, which exception was as follows: "1. The auditor erred in finding as a fact and in concluding from the testimony submitted that the decedent bound herself by an express promise to pay Rebecca B. and Sara J. Morton, the claimants, for the increased care, and in nursing and waiting upon her beyond the contract sum of $6.25 per week." (2) In dismissing the second exception to the report of the auditor. The exception was as follows: "2. The auditor erred in allowing Rebecca B. and Sara J. Morton $707.05 on their claim for services beyond the contract with the decedent."

*J. Frank E. Hause*, with him *John N. Guss*, for appellant.— The auditor finds that the claimants, when they fixed $6.25 as a weekly payment to be received by them from the decedent, took into consideration her condition. This contract, the auditor finds, existed without change from the time it was made until the decedent's death. The auditor further finds that the services performed by the claimants were precisely similar in character during the entire period, although during the decedent's later years they became more onerous. In view of the contract, and of these facts, it is impossible to sustain the claim, unless a new and express contract is shown to have been made, by which the more onerous services were to be paid for: Ranck v. Albright, 36 Pa. 367; Harrington v. Hickman, 148 Pa. 401; Brose's Est., 155 Pa. 619.

The case falls within the well-settled rule that loose declarations will not answer to constitute a contract. That which may be only an expression of an intention to compensate, is not evidence of an agreement to compensate. Making known such

evidence to third persons creates no binding obligation: Miller's App., 100 Pa. 568; Zimmerman v. Zimmerman, 129 Pa. 229.

Cases of this character must be carefully scrutinized, inasmuch as this claim could have been made in the lifetime of the decedent, and a legal liability fixed: Carpenter v. Hayes, 153 Pa. 432.

It was the duty of the claimants here, if they were dissatisfied during the decedent's lifetime with the contract they had made, to have so stated, and to have declined to have further performed services, or else made a new contract: McHugh's Est., 152 Pa. 442.

The auditor was not justified in his deduction that, from the language used by the decedent, she bound herself by a contract to pay additional compensation.   His conclusion in this regard having been reached from a consideration of and reasoning from the evidence offered, is reviewable, and his finding is not entitled to the weight given to findings of facts by a jury: Hindman's App., 85 Pa. 466; Cake's App., 110 Pa. 65; Reading Iron Works' Est., 150 Pa. 369.

*C. Wesley Talbot*, for appellees.—A finding of fact by an auditing judge, confirmed by the orphans' court in banc will not be disturbed by the Supreme Court except upon very clear proof of mistake: Coulston's Est., 161 Pa. 151.

The learned auditor in this case heard the witnesses and had the opportunity of observing the manner and character of their testimony, and upon the strength of their testimony found as a fact that the decedent did bind herself by an express promise to pay the claimants such an amount for the increased services, as they were reasonably worth.   The court below sustained the auditor in his findings.   " What clear proof of mistake " is now presented to this court, that would overthrow the conclusions of the auditor and the court below?

OPINION BY BEAVER, J., February 16, 1900:

There is a clear distinction between a distinct finding of fact by an auditor, concurred in by the court below, to which the effect of a verdict of a jury will be given by an appellate court, and a conclusion of law or deduction from undisputed testimony

which would raise the question as to whether or not there was sufficient evidence to go to a jury, as to which the appellate court can clearly judge and by which it will not be bound. The finding of the auditor in the present case belonged to the latter class. Taking the testimony adduced before him as true, was there a contract between the decedent and the appellees for the increased compensation claimed?

There is also a manifest distinction between a new contract for services rendered to a decedent in his lifetime not contemplated in a previous contract for services of a distinctly different character such as was found in Harrington v. Hickman, 148 Pa. 401, and that large class of cases in which claims for extra compensation under the guise of an amended contract are made for an amount over and above that expressly fixed by contract such as were made in McHugh's Estate, 152 Pa. 442, Brose's Estate, 155 Pa. 619, and Rosencrance v. Johnson, 191 Pa. 520. In the latter case Mr. Justice MITCHELL, delivering the opinion of the court, said : " There is no more fruitful source of dispute and litigation than claims for extras, and where they are superadded to claims upon an express contract for services of the same or a similar kind they should be made out clearly and explicitly before they are allowed." In the present case the claim is of the character above stated. There is no dispute as to the original contract, but it is claimed that the decedent in various ways indicated her belief that the claimants—the appellees here— were not sufficiently paid, and manifested a disposition to pay a considerable amount over and above that fixed in the original contract. The court below in approving the finding of the auditor said: " The question is we think, under all the evidence, a very close one, but we are not convinced that it was improperly solved by the auditor," and bases the conclusion thus reached, upon Harrington v. Hickman, supra; but in that case, as was specially found therein and has since been pointed out in some of the cases above cited, the judgment of the court-below in granting a nonsuit was reversed on the distinct ground that the original contract was for ordinary housework, and that a new contract, which was entirely distinct, had been entered into for nursing the decedent.

There can be no doubt of the value of the services rendered by the appellees in this case to the decedent, and there is as little

question as to the desire of the decedent to compensate them in some way for what she recognized as valuable services and increased care. The question recognized on all hands as being the important one is, was there a distinct contract for the payment of increased compensation different from that originally entered into between the parties? We cannot find anywhere in the case the clear and explicit evidence upon which such a contract should rest. However meritorious the claim of the appellees may be, it is of much more importance that the rule wisely established and long held should be adhered to, than that such a claim should be paid, even in a meritorious case, by a relaxation of the rule.

If the original contract, in which the amount to be paid was expressly stated, was changed, there should have been equal clearness as to the amount to be paid under the new contract. In the testimony quoted in the opinion of the court below, as justifying the auditor in his conclusion as to his finding of a contract, every element of a contract is wanting. There is no allegation that the decedent had agreed to pay the appellees, or that the amount to be paid had been in any way indicated or fixed. It was not the language of a person whose estate was liable or was to be made liable for payment for services rendered, because of a contract made, but that of a person who, out of the gratitude which she felt for kindness done, was willing "when she got her money"—which was in effect a contingency—that John should pay them. The other language, that they were not half paid for what they had done for her and that she was not half paying them, would seem rather to indicate that the previous contract was in force, but that she desired, as a gratuity, that they should receive something in addition, than that a new contract had been entered into.

It is not necessary, in this view of the case, for us to enter into a discussion of the question as to whether or not the claim of the appellees was res adjudicata by reason of the judgment rendered against them in the court of common pleas in a suit upon the note given by the decedent in acknowledgment of their services. The jury must have found against them in that case upon the testimony of one of them that she understood the amount included in the note to be a gift from the decedent to her and her sister. If her view was correct, it was, of course,

conclusive as to the right to recover and would seem almost necessarily also to be conclusive in the present case. As to this, however, we express no opinion, as we prefer to rest our decision upon the other ground.

In any view of the case, we fail to see how the decree or the court below, based upon the finding of the auditor, can be sustained. The decree is, therefore, reversed, the exceptions to the report of the auditor sustained, and the record remitted to the court below to make distribution accordingly.