## Lewis's Estate.

*Decedents' estates—Claims for nursing—Executors and administrators —Vouchers—Surcharge.*

1. Where an executor of a small estate claims credit for an item of $560 paid to his own mother for alleged services in nursing the decedent, and the residuary legatee files an exception to the item supported by affidavit, the burden is upon the executor to show the validity of the payment by vouchers or by proper proof, and if he fails to do so, he will be surcharged.  In such a case the exceptant is under no duty to prove the invalidity of the payment.

2. Loose declarations made to outside parties, indefinite understandings, suggested gratuities, anticipated benefactions and testamentary intentions not carried out, about which there may be some vague and unconvincing testimony, are not sufficient to establish an express contract, either to pay for extra services at the death of the testatrix or to provide for such compensation by a legacy.

Argued March 6, 1912.  Appeal, No. 22, March T., 1912, by Thomas Williams, from decree of O. C. Lackawanna Co., No. 63, Year 1910, dismissing exceptions to

executor's account in Estate of Elizabeth Lewis, deceased. Before RICE, P. J., HENDERSON, ORLADY, HEAD and PORTER, JJ.   Reversed.

Exceptions to executor's account.
The opinion of the Superior Court states the facts.

*Error assigned* was in dismissing the exceptions.

*A. L. Watson,* of *Watson, Diehl & Watson,* for appellant.—Accountant should not be allowed a credit for cash paid without the production of vouchers or proof that same was paid.   It was not shown that there was a distinct contract for the payment of increased or extra compensation different from that originally entered into between the parties: Grossman v. Thunder, 212 Pa. 274; Wise v. Martin, 42 Pa. Superior Ct. 443; Moore's Est., 12 Pa. Superior Ct. 599; Howard v. Drexler, 14 Pa. Superior Ct. 59; Piersol's Est., 27 Pa. Superior Ct. 204; Ranck v. Albright, 36 Pa. 367.

*Richard J. Bourke,* for appellee.—There seems to be no doubt, under the decisions, that the compensation, if not definitely fixed by the decedent, can be rendered, definite from the evidence: McCann's App., 6 Sadler (Pa.), 15; Cottrell's App., 4 W. N. C. 237; Thompson v. Stevens, 71 Pa. 161.

When and where the evidence clearly indicates a new contract or agreement, by express, definite terms, and whereby the claimant is to receive extra compensation for extra, special work, even though an actual, stipulated sum is not mentioned, the claim will be upheld: Harrington v. Hickman, 148 Pa. 401; Cottrell's App., 4 W. N. C. 237.

The bequest in the will and the claim for services are two different items and both would be sustained even if they appeared in the same will: Snively v. Stover, 78 Pa. 484; Brisben's App., 1 Lancaster Bar, No. 19.

OPINION BY ORLADY, J., July 18, 1912:

The executor of the estate of Elizabeth Lewis included in his final account an item, viz.: "June 11, 1910, by check, Gwennie Watkins, nurse services, $560," and on the hearing of an exception which was supported by an affidavit in due form, viz.: "Because the said testatrix, Elizabeth Lewis, was not at the time of her decease, indebted to Gwennie Watkins for services as nurse or otherwise in the sum of $560, or in any other sum whatever, and because the said executor should not take credit for or be allowed in his said account said sum or any part thereof," the executor declined on request to exhibit any receipt, voucher or statement of account representing this contested claim. He contended by his counsel that "it was an item in the account that the accountant asks allowance for, and the burden is on the exceptant to discredit it; on June 11, 1910, it was paid by the executor. He has not his vouchers here, the bank book has not been made up." The orphans' court judge, sitting as an auditor and before whom the exceptions were being heard, adopted this view of the law and dismissed the exception. There appears to have been an entire misconception of the duty of the executor as well as the duty of the court in disposing of a contested claim against a decedent's estate. The twenty-ninth section of the Act of March 15, 1832, P. L. 135, provides: "Every register, before he shall allow the account of any executor or administrator, shall carefully examine the same, and require the production of all necessary vouchers, or other satisfactory evidence of the several items contained in it."

Although an extensive discretion is allowed to executors in the settlement of claims against the estate, yet the orphans' court will not dispense with the exhibition by them of proper vouchers for payments made: Verner's Est., 6 Watts, 250. In Mylin's Est., 7 Watts, 64, it is said: The legislature has conferred upon the orphans' court a power undeniably exercised by a court of chancery; but it certainly did not intend to alter all of the

rules of evidence heretofore considered in courts of law or equity, by the introduction of the mischievous and pernicious principle of enabling a party in interest to give evidence in his own cause. In Bowman v. Herr, 1 P. & W. 282, it is said, cases may arise where the orphans' court may in the exercise of a reasonable discretion, supply the want of a regular voucher by the oath of a guardian or administrator; but it must be done with great caution. It is a kind of evidence on which little reliance should be placed; it should be resorted to with great delicacy, and even then should be sustained by some corroborative proof; and again in Romig's App., 84 Pa. 235, although receipts are not indispensable, yet it is the imperative duty of registers, auditors, and the judges of the orphans' court to require some distinct and definite form of proof to establish the validity of demands made against decedents' estates. The exception filed to the allowance of this claim was direct and specific, and the payment by the executor was made under circumstances that were calculated to arouse ·suspicion as to his good faith and fairness.

In August, 1907, when the decedent was about eighty years of age, she went to live with Gwennie Watkins, a widow and a friend of many years' acquaintance. She was in failing health and made a contract with Mrs. Watkins by which she was to pay her $12.00 a month for her board, which it is practically admitted embraced the services and accommodations represented by that term, and which amount was regularly paid until her death, January 28, 1910. While. this relation continued—on November 8, 1909—the decedent signed a paper, which was prepared for her by the person with whom she was then arranging for her funeral; as follows: "I, Mrs. Lewis, being of sound mind does say, that after my funeral expenses by payed, that Mrs. Watkins must be payed for nursing (me, Mrs. Lewis)," and signed it, Elizabeth Lewis Lewis, which paper was witnessed by the undertaker. And it is not pretended that Mrs. Watkins was either

present when the paper was signed or knew of its existence, or that she ever had any conversation with the decedent in relation to any claim by her for services as a nurse. Mrs. Lewis suffered from a complication of diseases and a pronounced dropsical condition which required tapping several times, and she gradually became weaker and more dependent upon others. One month after signing the above paper she made her will, regularly executed, in which she bequeaths to Mrs. Gwennie Watkins (being the person with whom I am now living), $900, to David Watkins (a son of Gwennie Watkins, and the executor named in her will), $200, to Sarah Watkins (a daughter), the sum of $100, to three children of her deceased husband's nephew, the sum of $50.00 each, and to Thomas Williams, a nephew (the appellant) the rest, residue and remainder of her estate, which aggregates $3,804.32—the expenses of administration (including the item of $560), were $1,563.34, and left for distribution to the legatees $2,277.38. Gwennie Watkins did not make any claim before the court for her services in nursing the defendant, and the paper of November 8, 1909, lacked many essential elements of a contract for such services. There was no evidence of her making any request or demand of the decedent for additional compensation for services as a nurse. That Mrs. Lewis appreciated the care and attention shown to her is evidenced by the statements made to her friends and physician, but Mrs. Watkins was never present on such occasions, and there is no evidence of any specific promises to pay any particular amount.

The circumstances surrounding the claim and the parties, coupled with the refusal of the son of the claimant, who was the executor of the will which gave to his mother, sister and to himself the bulk of the estate, to exhibit an account or statement of his mother's alleged services, made this a case specially within the rule declared in Moore's Est., 12 Pa. Superior Ct. 599; Wise v. Martin, 42 Pa. Superior Ct. 443; Grossman v. Thunder, 212 Pa.

274. "Loose declarations made to outside parties, indefinite understandings, suggested gratuities, anticipated benefactions and testamentary intentions not carried out, about which there may be some vague and unconvincing testimony, are not sufficient to establish an express contract, either to pay for the extra services at the death of the testatrix or to provide for such compensation by a legacy."

The paper of November 9, 1909, was never delivered, and taken in connection with the execution of the will on December 9, which gave Mrs. Watkins $900, would indicate that the later paper was intended to be an extinguishment of the earlier one. However, the refusal of the executor to sustain his claim for allowance in his account by vouchers when they were demanded, made it obligatory on the court under a long line of decisions to sustain that exception.

The decree is reversed and the accountant is surcharged with the amount of $560, as of December 20, 1910, the date of filing the account. The costs to be paid by the appellee.