## McCartney's Estate (No. 1).

*Decedents' estates—Executors and administrators—Attorneys—Vouchers—Surcharge.*

Where the records of an attorney having in his hands the funds of a decedent's estate do not show any vouchers, receipts or accounts, he will be surcharged with the amounts coming into his hands which are not properly accounted for.

Although receipts are not indispensable, yet it is the imperative duty of registers, auditors, and judges of the orphans' court to require some distinct and definite form of proof to establish the validity of demands made against decedent's estates.

Argued May 2, 1922.   Appeal, No. 121, April T., 1922, by G. L. McCartney, administrator d. b. n. of the Estate of Mary E. McCartney, from decree of O. C. Allegheny Co., June T., 1921, No. 338, dismissing exceptions to executor's account in Estate of Mary E. McCartney, deceased.   Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.   Reversed.

326, (1922).] Statement of Facts—Opinion of the Court.

Exceptions to executor's account. Before MILLER, P. J.

The facts are stated in the. opinion of the Superior Court.

The court dismissed its exceptions. Exceptant appealed.

*Error assigned* was the decree of the court.

*S. S. Robertson,* and with him *Ellsworth Jordan,* for appellant.

*John Rebman, Jr.,* for appellee.

OPINION BY TREXLER, J., July 13, 1922:

Mary McCartney died January 3, 1917, leaving to survive her a husband and two sons. Her estate consisted of a mortgage of $1,100. Her husband, John McCartney, administered upon her estate. He received a check for the amount above stated which he immediately endorsed as administrator and handed it to C. L. Stevenson, who was his attorney and he in turn deposited the check in his own account in the Commonwealth Trust Company of Pittsburgh. The two sons severally executed releases to their father in which they acknowledged the receipt of their full share of their mother's estate in consideration of $1 paid to each of them. On November 26, 1917, John McCartney died having appointed the said C. L. Stevenson, executor. There had been no account filed in the estate of Mary McCartney and on May 9, 1921, G. L. McCartney, one of the sons, was appointed administrator d. b. n. of his mother's estate and instituted proceedings praying that C. L. Stevenson be required to pay to him as such administrator, the money in his hands, received by him as attorney. Without any order to that effect, at least none appears on the printed record submitted to us, Mr. Stevenson, as executor of. John McCartney, filed an account for the decedent as admin-

istrator of Mary E. McCartney, and it is that account which is before us in the present controversy. We might state in the outset that Stevenson submitted himself to the orphans' court and the question of jurisdiction is not raised. We are met with the proposition that G. L. McCartney, who initiated the proceedings, having in signing the contract released his share in the estate of Mary McCartney has no standing and the court below in its opinion holds that the release barred him from any participation in his mother's estate. He, however, has standing as administrator d. b. n. of that estate. The money received by Stevenson was received from Mary E. McCartney's estate and the money which was turned over to him by John McCartney as administrator of said estate is payable, so far as it is not actually accounted for, to George McCartney, the administrator d. b. n. of said estate. As stated before, Stevenson has submitted himself to the orphans' court and although the account which he filed is filed for the decedent McCartney, if it appears that he owes said estate in his individual capacity, he may be surcharged: Bull's App. 24 Pa. 286. The statement filed by him purports to show what he did with the money he improperly put into his own bank account. If he has any money on hand of the Mary McCartney estate, Mary McCartney being deceased, it must go to said estate. The question of its distribution does not concern Stevenson. Certainly Stevenson has no right to it and it should go to whomever it belongs. If it belongs to John McCartney's estate, the latter's heirs will eventually get it.

As we turn to the items of the account, we are met with the opinion of the auditing judge "that the handling of the funds has been very irregular, and the testimony as to the disbursements is unsatisfactory; yet in view of the fact that there are no creditors now appearing; of the release executed by this exceptant to his father as administrator of his mother's estate; to the failure to rebut the credibility of the testimony as to the dis-

bursements of the fund, coupled with the exceptant's inability to show that the release was improperly obtained, he has no standing to question now, what he bound himself by, when the release was executed and delivered; therefore the exception must be dismissed."

As we have already discussed the effect of the release, the failure to rebut the testimony is the only question left for us to consider. The burden of proof was on the accountant, the mere failure of the exceptant to rebut the testimony offered by him was not decisive. It was incumbent upon the accountant to produce sufficient evidence to sustain his position. As to the principal item in the account, there was an entire absence of vouchers and records and a failure to give in detail the times and amounts of the various payments composing the item. According to his testimony he had never kept a set of books in his life and the court commented on this "You had better learn; that gets more men into trouble than anything else."

The item in question reads as follows:—"John McCartney balance $659.75." The accountant testified "I did not pay John McCartney in money—in checks, I paid him in cash." "We had the account of John McCartney, $1,100, on an ordinary slip of paper and various amounts paid him I would set down; when he came in the last time I had $50 about and I said that was my fee." The accountant further testified that he always gave him cash and never had a bank account and never kept a bank stub in his life. The amount was said to have been paid in different sums ranging from $50 to $200. This testimony is plainly insufficient to cover this item. It may be that the statements that Stevenson testified to are true but he has not shown payment in the proper way and if loss accrues to him, it is chargeable to his own carelessness. If executors or administrators could absolve themselves from payments of amounts which are due for moneys in their hands, by such testimony, the orphans' courts would become a forum where fraud could

easily be accomplished and the estate of decedents readily misappropriated.

We are not without aid in applying the proper rule to such a state of affairs. In Verner's Estate, 6 Watts 250, it was held "Although an extensive discretion is allowed to executors in the settlement of claims against the estate, yet the orphans' court will not dispense with the exhibition by them of proper vouchers for payments made." The court held in Lewis' Estate, 50 Pa. Superior Ct. 417, that "the burden is upon the executor to show the validity of the payments by vouchers or by proper proof, and if he fails to do so, he will be surcharged." In Bowman v. Herr, 1 P. & W. 282, it is said that cases may arise where the orphans' court may in its exercise of reasonable discretion supply the want of a regular voucher by the oath of a guardian or administrator; but it must be done with great caution. It is a kind of evidence upon which little reliance should be placed; it should be resorted to with great delicacy, and even then should be sustained by some corroborative proof; and in Romig's App., 84 Pa. 235, it is stated that although receipts are not indispensable, yet it is the imperative duty of registers, auditors and the judges of the orphans' courts, to require some distinct and definite form of proof to establish the validity of demands made against decedents' estates. The question as to the weight to be given to the oath of an accountant in his own behalf is discussed by Judge SHARSWOOD in Reeside v. Reeside, 6 Philadelphia Reports 507.

The decree entered by the orphans' court is reversed, and the record is remanded with instructions to surcharge the accountant with the amount of $659.75 and to enter a decree accordingly. Costs of this appeal to be paid by C. L. Stevenson.