## In re Thomas M. Clark.

*Michael J. O'Callaghan,* for guardian.

*Samuel W. Salus,* for *cestui que trust.*

ALESSANDRONI, J., Dec. 16, 1930.—Thomas M. Clark was confined to the State Hospital at Norristown in 1923, and on Jan. 8, 1924, Mary L. Clark was appointed guardian of the estate of her husband, Thomas M. Clark, by reason of his insanity. On Jan. 25, 1928, Thomas M. Clark was discharged from

Norristown by order of court, and on Feb. 27, 1928, Mary L. Clark was discharged as guardian and ordered to turn all property over to Thomas M. Clark and to file an account. Testimony was taken before the auditor on the account, and to the original report filed by the auditor certain exceptions were filed. These exceptions were considered by the auditor, who modified in some respects his original report, and to the supplemental report filed by him exceptions have now been taken by both the accountant and Thomas M. Clark.

The accountant's first exception is to a surcharge in the sum of $800, due to the auditor's refusal to allow a credit of $800 claimed by the accountant for money paid the City of Philadelphia. The accountant claimed that a trespass action was brought against the City of Philadelphia by Bridget and Patrick McGaughey in the Court of Common Pleas No. 2, as of March Term, 1923, No. 4590. The plaintiffs claimed compensation for injuries caused by a defect in the paving of one of the properties owned by the estate of Thomas M. Clark. A verdict in the sum of $800 was recovered by the plaintiffs, which the accountant claims she paid to her attorney, J. M. R. Jermon, in cash, to be paid to the City of Philadelphia. Apart from accountant's unsupported statement, there was no evidence introduced by her to prove the payment of this money. No receipts were produced, and no canceled checks were offered in evidence. The accountant's testimony was evasive and contradictory. At one time she claimed that the money she used to pay this obligation had been deposited in the Columbia Avenue Trust Company. She later contradicted this statement. Several different explanations were made by her as to the source of the $800 which she paid to her attorney in cash, and the only proof of her claim is her uncorroborated statement. A representative of the city solicitor's office testified that the city records do not show the payment of this sum, nor does J. M. R. Jermon's name appear in their file. Under these circumstances, we must conclude that the auditor's surcharge was correct.

The accountant next excepts to the disallowance of a claim for $600, for her support from Feb. 27, 1928, to Sept. 25, 1928, the date of the filing of her restated account. On Feb. 27, 1928, a decree was entered finding that Thomas M. Clark was capable of handling his own estate, discharging the accountant from her guardianship and ordering her to file an account and return all the property of Thomas M. Clark to him. An account was subsequently filed by the accountant and a restated account was filed on Sept. 25, 1928. We know of no authority which would entitle the accountant to support between the date of her discharge and the date when she filed her final account. The original order entered was made under the authority of section 6 of the Act of May 28, 1907, P. L. 292. It is there provided that "the court appointing such guardian shall have full power over the same, in directing an allowance for the said ward and for the support and maintenance of his wife. . . . " Section 7 provides that "if the court shall find that the said person so afflicted has regained the ability to care for his or her property, the court shall so decree, and shall discharge the guardian; and thereupon the said person shall be, so far as the care of his or her property or person shall be concerned, for the future, the same as if the proceedings against him or her had never been taken." Immediately upon the discharge of the guardian and the order returning the lunatic's property to him, the lunatic was placed in the same position as if none of the proceedings had ever been taken against him. The provisions of the act merely empower the court to direct support during the time it has control over the lunatic's estate. The moment the guardian is discharged the support order ceases and she must take such proper steps to obtain support as are afforded against those *compos mentis*. The account-

ant's remedy was to be found only in the Municipal Court, which, under the Act of July 17, 1917, P. L. 1015, has exclusive jurisdiction. The auditor's surcharge of $600 was in accordance with the law.

The accountant's third exception is to the auditor's disallowance of counsel fee in the sum of $250 in the proceedings to remove Mary L. Clark as guardian and return the property of Thomas M. Clark to his care. On Jan. 25, 1928, in the Quarter Sessions Court at Philadelphia, Judge Davison, specially presiding, found that Thomas M. Clark had recovered from his mental illness and should not be further detained at the State Hospital at Norristown. Thomas M. Clark was later compelled to bring proceedings to have Mary L. Clark removed as guardian, and the proceedings were opposed by Mary L. Clark, who engaged counsel to represent her. These services cost $250, and the auditor refused to allow the accountant credit for that fee. The auditor, however, allowed an attorney's fee of $200, claimed by the accountant to oppose the writ of *habeas corpus* of Thomas M. Clark. This allowance was a proper one. In Brooke's Estate (No. 1), 36 Pa. Superior Ct. 327, a similar question arose, and the court ruled that a guardian is not entitled to counsel fees to oppose removal from office. The court there stated that a guardian is only entitled to a credit for such counsel fees as are necessary in the discharge of his duty as guardian. Thomas M. Clark, having recovered, had, after hearing, been discharged by the court. The further expenditure of the guardian in opposing her removal from office, in view of these facts, was not justified, and under the foregoing authority, is not a proper allowance. The sole purpose of her action was to retain herself in office, and any fees that might have been expended for that purpose were expended on her own account and not for the benefit of the estate over which the court had given her jurisdiction.

The accountant's fourth exception is to the disallowance of a commission of $100 for services rendered in the sale of some of the real estate entrusted to her care. The accountant had claimed a commission of $50 each on two small houses which she sold. A charge of $832.07 against the estate for services rendered by the accountant had been allowed by the auditor. This compensation apparently was for all the services rendered by the accountant, and the auditor has found that the allowance of this $100 would be a double payment for these services, inasmuch as the original allowance included all the services rendered. While it is true that a real estate broker would have been entitled to compensation, still the accountant acted in her representative capacity as guardian in negotiating for the sale of these properties, and any change made, therefore, should properly be considered in her claim for compensation as guardian. Having made a reasonable claim for compensation, we are not in sympathy with an allowance of extra compensation in detached transactions. The fourth exception is, therefore, dismissed.

The accountant's final exception is to the finding of the auditor that the accountant should be surcharged with one-half of the costs of the audit. The estate involved was unquestionably very difficult to manage. It consisted of fourteen small properties which were in a very rundown condition, were very old and required constant care and attention. In addition, the class of tenants necessarily found in this type of property caused considerable trouble. As a result, there were numerous small expenditures made by the accountant for repairs, etc., for which no adequate record was kept by the accountant; numerous errors appeared upon an examination of the account and it was necessary for the accountant to restate her account. The loose manner in which her records were kept and the fact that adequate receipts could not be

produced for all the items of receipt and expenditure unquestionably necessi-tated prolonged examinations before the auditor and were caused to a great extent by the accountant's laxity. Under these circumstances, part of the expense of the audit should be imposed upon the accountant, and we believe a surcharge of 50 per cent. of the audit is a fair allocation. It must be remembered that the accountant is the wife of Thomas M. Clark, and not being properly informed as to the procedure to follow in the discharge of her duties felt that the property over which she exercised control was community property.

The accountant's sixth exception is merely a summation of the above items.

Four exceptions to the auditor's supplemental report were filed on behalf of Thomas M. Clark. The first exception is to the auditor's refusal to sur-charge the accountant $1751.68. This sum covers more than 150 separate items of expenditures which were included in the account and which it is con-tended were not properly proved. It consists of items of credit claimed for repairs made on the properties comprising the estate and for clothing and money expended on behalf of Thomas M. Clark during the period from 1924 to 1928 when the lunatic was confined to the Norristown State Hospital. The basis of the exception is that the accountant has not produced vouchers to prove the expenditures. It is established in this jurisdiction that under cer-tain circumstances the want of regular vouchers may be supplied, in the dis-cretion of the court, by the oath of the guardian. The court, in McCartney's Estate (No. 1), 79 Pa. Superior Ct. 326, stated: "In Bowman v. Herr, 1 P. & W. 282, it is said that cases may arise where the Orphans' Court may in its exercise of reasonable discretion supply the want of a regular voucher by the oath of a guardian or administrator; but it must be done with great caution. It is a kind of evidence upon which little reliance should be placed; it should be resorted to with great delicacy, and even then should be sustained by some corroborative proof; and in Romig's Appeal, 84 Pa. 235, it is stated that although receipts are not indispensable, yet it is the imperative duty of regis-ters, auditors and the judges of the Orphans' Courts, to require some distinct and definite form of proof to establish the validity of demands made against decedents' estates. The question as to the weight to be given to the oath of an accountant in his own behalf is discussed by Judge Sharswood in Reeside v. Reeside, 6 Phila. 507."

There it was stated: "So, also, when the account was of long standing, the court has sometimes permitted the accounting party to discharge himself upon oath of all such matters as he could not prove by vouchers by reason of their loss."

In the present case, the accountant's first attorney, J. M. R. Jermon, who had received some of the vouchers from the accountant, died, and an examina-tion of his accounts did not disclose the vouchers which had been turned over to him. It was testified that those handling Jermon's estate destroyed some of his records and papers, and this certainly accounts for the loss of some of the vouchers. In addition, it was testified that the accountant's present attorney had lost some of the vouchers. The accountant further explained that all checks which she paid had to be countersigned by the surety company, and as to those which were in smaller sums she usually paid in cash. One book of accounts which the accountant kept, and from which a member of the bar testified he prepared the account, had been lost. The accountant is well advanced in years, and, of course, had no knowledge of the proper method of keeping books. In addition, many of the items were very small and instances of this kind of expenditures were quite numerous. Such a condition prevailed

because of the character of the real estate over which she had control. In view of these facts and the additional consideration that the expenditures which she claimed appear quite necessary for the maintenance of the estate over which she had jurisdiction, we feel that the proof offered is sufficient. Moreover, the only testimony to disprove the fact that Thomas M. Clark had received the clothing and funds for which she claimed credit was provided by Thomas M. Clark himself, who, during this entire period, was legally insane. No effort was made to establish his competency to remember just what he received, and in many respects he corroborated the accountant's statements. In view of all these facts and the clear statements made by the accountant herself as to the various items of expenditure, we believe that the allowance was proper and that the exception should be dismissed.

The second exception filed on behalf of Thomas M. Clark is to the auditor's refusal to surcharge the accountant $832.07, which was allowed her as compensation for her services. We are of the opinion that the amount allowed is very reasonable, especially in view of the character of the estate. The auditor has reported that the houses are ancient, dilapidated, require constant repairs and the tenants are of a difficult character. These facts are not denied by Thomas M. Clark. The accountant's services represented four years' personal supervision and attention, and, in spite of the fact that her accounts were not kept in the manner in which they should have been kept, we feel that the allowance was reasonable and thoroughly deserved.

Thomas M. Clark excepts to the auditor's charge of one-half the cost of the audit which was placed upon him. We feel that the auditor's disposition of the cost of the audit was proper and equitable. Numerous exceptions were filed to the account on behalf of Thomas M. Clark which proved to be frivolous, and considerable testimony was taken on his behalf which prolonged the audit unnecessarily. We have carefully read through the record of the proceedings before the auditor and concur in the imposition of costs made.

The final exception filed on behalf of Thomas M. Clark is to the auditor's refusal to surcharge the accountant $120, which is an item of one year's interest on a $2000 mortgage. This question was raised merely by a letter addressed to the auditor and is not supported by any testimony. There is nothing to indicate that this interest was received by the accountant, and there is no proper objection stated on the record which requires consideration. In view of the fact that the claim is not supported by testimony and that the question is not properly before us, the fourth exception must be dismissed.

### Decree.

And now, to wit, Dec. 16, 1930, upon consideration of the auditor's report and supplemental report in the above entitled matter, the same are hereby approved, and in accordance therewith Thomas M. Clark is hereby awarded the sum of $572.53 against Mary L. Clark; the auditor, Gustave F. Straub, Esq., is awarded the sum of $389.90 for his fee and costs expended, said fee and costs to be borne equally by Thomas M. Clark and Mary L. Clark; and the Commonwealth of Pennsylvania is awarded the sum of $601.02 against Thomas M. Clark for his maintenance at the Norristown State Hospital.