# Normile, Appellant, v. Osborne.

*Husband and wife—Contract—Claim for services—Decedent's estates.*

A husband with the knowledge and consent of his wife made a contract with an aged and infirm man to move his family into the latter's house, and take care of him. The family was to have the use of half of the house, and the husband was to receive $30.00 per month. The family moved into the house, and the wife assisted in the performance of services for which the contract was made. Some of the duties were of an unpleasant character. The wife occasionally received and receipted for the monthly payments. She never made any objection to the sufficiency of the compensation, or claimed that she was entitled to any additional or extra sum for nursing. After the death of the owner of the house the wife claimed from his estate compensation on a quantum meruit "for nursing and otherwise caring for the decedent during his lifetime." *Held*, that the wife was not entitled to recover.

Argued Oct. 16, 1903. Appeal, No. 132, Oct. T., 1903, by plaintiff, from order of C. P. Venango Co., Aug. T., 1901, No. 33, refusing to take off nonsuit in case of Nettie Normile v. B. H. Osborne. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Assumpsit for nursing a decedent. Before CRISWELL, P. J.

The facts are stated in the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*Robert F. Glenn*, for appellant, cited: Lewis's Est., 156 Pa. 337 ; Nuding v. Urich, 169 Pa. 289.

*John O. McCalmont*, for appellant, cited: Rosencrance v. Johnson, 191 Pa. 520 ; Brose's Est., 155 Pa. 619.

OPINION BY MR. JUSTICE MESTREZAT, January 4, 1904:

We think it is clear that the services rendered by Mrs. Normile and for which this action was brought, were covered by the contract under which she and her husband were to remove to the home of the deceased and take care of him. Tobey, the brother

of Mrs. Normile as the agent of Mr. Pike, made the contract for the services and is the principal witness to sustain this claim against Pike's estate. He testifies that his instructions from Pike were " to secure some family to come in there (Pike's home) ; to hire somebody to take care of him and take care of his house ;" that " Pike gave me authority to hire someone to come in there and take care of him." Pursuant to these instructions, Tobey entered into a parol agreement with Patrick Normile, the husband of the plaintiff, and he with his family removed to, and with Pike occupied, the latter's residence on December 30, 1898. The contract was to continue until April 1, 1899, and Normile was to receive $30.00 per month and have the use of one half of the house. It must be presumed, without evidence to the contrary, that Tobey, in the employment of Normile, obeyed the instructions of his principal and secured the " family to come in there and take care of " Pike. Under the contract as construed by the Normiles, Pike was furnished his meals, his room was cared for, his washing was done, his stock was attended to, he was assisted to dress and undress, and Mr. Normile slept in an adjoining room so that he could give Mr. Pike any attention he needed during the night. Mrs. Normile assisted in the performance of these services.

Tobey says that the contract was made with Normile, which is no doubt correct; but it is apparent from the evidence that Mrs. Normile was fully cognizant of, and assented to, its terms and that she, as a member of her husband's family, was to assist in taking care of Pike. Immediately on their removal to Pike's house she began to take care of him and continued to do so until his death in March, 1901. As time went on, her duties as well as those of her husband became more arduous and Pike's increasing infirmities imposed more labor on both. But the character of the services was the same during the entire time the Normiles resided with, and took care of, Mr. Pike. It is true that a part of the time he was very sick and required the attendance that a sick man must have, and it also appears that Pike appreciated the additional labor which this entailed upon the Normiles and frequently expressed his gratitude for Mrs. Normile's constant and faithful services, but there is no evidence to show that such services were extra the contract.

In fact, we think the inference is irresistible that the very purpose Pike had in view in securing the removal of the family to his home and their services in caring for him was that he might have their services and attention during his illness rather than when he was well and able to care for himself. Pike was eighty-three years of age and he as well as Tobey recognized the former's enfeebled condition when this contract was made and it was expressly stipulated that Normile "was to assist him to dress and undress and to sleep in the adjoining room so that if he wanted a drink of water or anything in the night he could call to him." It is, therefore, manifest that the agreement was made with the knowledge of all parties that the services to be performed by the Normile family were not such as a man in a strong and healthy condition required, but those demanded by an aged and infirm man whose physical condition would impose the performance of constant and, possibly, unpleasant duties.

It is contended, however, that Mrs. Normile, the plaintiff, was not a party to the contract between her husband and Pike's agent and that, therefore, she is not precluded from recovering the services which she rendered Pike. This is an action on a quantum meruit "for nursing and otherwise caring for the decedent during his lifetime." It is not alleged that there was any contract between Pike and Mrs. Normile by which she was to be paid for the services for which she claims remuneration in this case. It is conceded that these services were rendered during the period in which the Normile family was required to take care of the decedent under the contract of December, 1898. As we have attempted to show, that contract required the performance of the services for which this action was brought. The evidence, we think, conclusively shows that Mrs. Normile was a party to the contract or consented to its terms and that her services were rendered in pursuance of it. Tobey's instructions from Pike were to secure a family to take care of him, and pursuant to these instructions the Normile family was engaged and removed to the house and performed the services. Some of the services, admittedly embraced in the contract, Normile could not be expected to perform and Mrs. Normile was obliged to perform them and she did so. The preparation of his meals and care of his rooms naturally required the atten-

tion of Mrs. Normile.    She did this work as well as his washing without objection or claim for compensation.    It is, therefore, apparent that her removal to the home of the decedent and performance of services there were done under the contract made by her brother as the agent of Mr. Pike.    As further confirmative of this fact, Mrs. Normile received and receipted for some of the monthly installments of $30.00 which were paid by Mr. Pike regularly each month during his life and the continuance of the contract.    She made no objection to the sufficiency of the compensation and received it without even a suggestion to him that it did not include payment for her services, or that she was entitled to any additional or extra sum "for nursing and otherwise caring for" him.

The declarations of Mr. Pike, shown by the testimony, were not sufficient to rebut the presumption that Mrs. Normile's services were covered by the contract.    He fully appreciated her work and so expressed himself.    He also desired that she should be sufficiently compensated for it.    But there is no testimony that he did not think the monthly payments and the rental of the house did not adequately pay both herself and her husband for the services they performed.    That he thought she was sufficiently paid for her work, we think conclusively appears from the fact that he made, and she and her husband received, the monthly payments from January, 1899, to March, 1901, the time of Mr. Pike's death, without any suggestion to her that she was entitled to, or would be paid, any further compensation.

There was no evidence to support the plaintiff's claim and the learned trial judge was right in withdrawing the case from the jury.

The judgment is affirmed.