## Moore v. Minor, Appellant.

*Decedents' estates—Claim for services—Boarding and nursing—Aunt and niece.*

An aunt cannot recover from the estate of a niece who died a minor, a claim for boarding and nursing the niece, where it appears that a certain monthly allowance was paid under an order of the orphans' court to the aunt, out of the minor's estate, that the aunt accepted this allowance without objection, that there was never any express agreement by the minor or her guardian to pay any amount in excess of the allowance, and the only evidence tending to support an agreement, were statements made by the niece to other parties that she intended to pay her aunt for everything she did.

Argued April 28, 1914. Appeal, No. 112, April T., 1914, by defendant, from judgment of C. P. Allegheny Co., Dec. T., 1911, No. 837, on verdict for plaintiff in case of Frances Moore v. W. E. Minor, Administrator

of the Estate of Eliza J. Moore or Lydia J. Moore, deceased.   Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ.   Reversed.

Assumpsit for board and nursing.   Before EVANS, J. The opinion of the Superior Court states the facts. Verdict and judgment for plaintiff for $600.   Defendant appealed.

*Error assigned* among others was in refusing binding instructions for defendant.

*A. Devoe P. Miller,* for appellant.—The orphan's court has exclusive jurisdiction over questions of the kind at bar: Johnstone v. Fritz, 159 Pa. 378; West v. Gregg, 1 Grant, 53; McHugh's Est., 152 Pa. 442.

No express contract with sufficient definite and certain terms, as is required in a case of this kind, was proven: Ulrich v. Arnold, 120 Pa. 170; Zimmerman v. Zimmerman, 129 Pa. 229; Barhite's App., 126 Pa. 406; Wise v. Martin, 232 Pa. 159.

The family relation proven in this case destroyed the presumption of an implied contract: Neal v. Gilmore, 79 Pa. 421; Ruckman's App., 61 Pa. 251; Seitz's App., 87 Pa. 159; Douglass' App., 82 Pa. 169; Horton's App., 94 Pa. 62.

The contract, if any did exist, was with the minor and not with the guardian, as it should have been subject to approval of the orphans' court: Guthrie v. Murphy, 4 Watts, 80; Bradin v. Dwen, 2 Watts, 95; Watson v. Hensel, 7 Watts, 344; Johnson v. Lines, 6 W. & S. 80; Ryan v. Boltz, 48 N. Y. Superior Ct. 152.

*Herman L. Grote,* with him *Frederick C. Grote,* for appellee.—The court had jurisdiction: Larkin's Est., 16 Phila. 333.

The relationship of the parties does not preclude a recovery where there has been an express promise to

pay for the services: Currey's Est., 26 Pa. Superior Ct. 479; Carpenter v. Ulmer, 29 W. N. C. 551.


OPINION BY ORLADY, J., July 15, 1914:

This action of assumpsit was brought against an administrator to recover for boarding, lodging and nursing of a minor. When Eliza J. Moore, the deceased minor, was but seven months old, her mother died, and she with her sisters went to live in the family of her grandmother, in whose home also resided her Uncle Harry, and her Aunt Frances Moore, and where she resided until her death, at which time she was not of full age. Frank N. Christy, Esq., who was appointed guardian of the estate of Eliza J. Moore by the orphans' court of Allegheny county, on July 13, 1907, on January 26, 1910, presented his petition to that orphans' court; reciting that his ward resided with her uncle and aunt who were unable to provide necessary medical attention required by the minor, and that his ward was in immediate need of money and medical attention—the child at that time being confined to her bed. After hearing, an order was made by the orphans' court directing the guardian to advance to the ward "the sum of $25.00 per month, the court being satisfied that said sum should be awarded for the present necessaries of the minor, and that the guardian was entitled to credit for the sum of $150 previously advanced by him for use of said minor," all of which sums were paid to Frances Moore, the plaintiff in this action. This claim for board and lodging is for the year preceding the last year of her life, and for nursing for the two years immediately preceding her death, and alleged to be furnished at the special instance and request of the minor. It appears from the statement of claim that as soon as the child Eliza was old enough to earn wages she was placed at work, and until March, 1908, "had been employed and had been earning her own living." In support of the allegation of an express or implied contract for these

extra services, two witnesses testified on behalf of the plaintiff, that the minor had stated to them severally, after she became seriously ill, "that she intended to pay her aunt for the boarding and nursing and everything she did for her;" "She didn't see anything too much for her to pay her aunt for her services, she was so grateful to her for all she had rendered her." This phase of the controversy was presented to the jury by the learned trial judge, as follows: "The plaintiff alleges that there was an agreement on the part of this girl to pay, and she alleges that the services were performed at her request, which would imply an agreement to pay. Therefore, you must find, if you find for the plaintiff, that there was an agreement between these parties—not to pay any definite amount, but that there was an agreement, that a reasonable amount should be paid; that they were not as one family, but that the girl agreed to pay her expenses, whatever they were. If you find it was done at her request, there would be an implied agreement on her part to pay a reasonable amount."

The undisputed evidence shows that this child lived continuously for twenty years as a member of the aunt's family, and when receiving wages of labor, she "took out what was needed for her necessities and handed the balance over to the aunt." It further appears that after the minor came out of the hospital the father, who had remarried, endeavored to have her become a member of his own family, which was not permitted by this plaintiff.

The testimony on which the plaintiff founds her claim lacks the essentials fixed by the decisions to entitle her to a recovery. The aunt and minor niece are not brought together at any conversation. No express contract is shown, and no implied promise can be reasonably inferred. It is not suggested that the services were rendered on the faith of such promises. No time is stated when the claim was to start, nor that the

amount received by the aunt from the guardian was not satisfactory to her for all services rendered. No time or manner of payment is specified or that the words used were other than an appreciation of the affectionate attention she was receiving from her aunt. No attempt is made to apply the promise or desire suggested to the special or extra services in addition to the general boarding and lodging account, or that it was to embrace a greater time than covered by the admitted weekly payments. The child could not bind her estate except for actual necessaries, and there is no testimony showing that the guardian of her estate had been consulted in regard to such special or unusual expenses. The physical condition of the minor had not changed for a year prior to the date of the order of court.

The Act of June 16, 1836, P. L. 792, par. 19, gives to the orphans' court jurisdiction over the control, removal and discharge of the guardians of minors and the settlement of their estates. The orphans' court of Allegheny county had jurisdiction of this minor and her estate, it had fixed the amount which the guardian should expend for her maintenance. The plaintiff had accepted the whole of the allowance so made, and had not requested or claimed that a larger amount should be paid to her by the guardian. That court should pass on the propriety of such claims and its order as made was its adjudication of the amount that should be expended by the guardian. Here the guardian is protesting against further expenditure of the funds of the estate than that fixed by the court. The Supreme Court in a similar case, Johnstone v. Fritz, 159 Pa. 378, say: "If the common pleas may take cognizance of questions of allowance, it may take cognizance of the conduct of the guardian and the settlement of his accounts, for the one involves the other; this the law will not permit." See also McHugh's Est., 152 Pa. 442.

This belongs to a class of cases in which the courts

have frequently said every intendment should be most strongly taken against the validity of the claim: Grossman v. Thunder, 212 Pa. 274. There is no more fruitful source of dispute and litigation than claims for extras, and where they are superadded to claims upon an express contract for services of the same or a similar kind, they should be made out clearly and explicitly before they are allowed: Moore's Est., 12 Pa. Superior Ct. 599; Wise v. Martin, 42 Pa. Superior Ct. 443, s. c., 232 Pa. 159.

The plaintiff never made objection to the sufficiency of the allowance as fixed by the orphans' court, or claimed that she was entitled to any additional compensation as an extra sum for nursing: Normile v. Osborne, 207 Pa. 367. Doubtless the plaintiff was disappointed at not receiving a legacy through a will which had been executed by the minor, but was inoperative by reason of her minority. This does not add to the validity of her claim in this action of assumpsit. "Loose declarations made to outside parties, indefinite understandings, suggested gratuities, anticipated benefits and testamentary intentions not carried out, about which there is some vague and unconvincing testimony are not sufficient to establish an express contract, either to pay for the extra services at the death of the testatrix, or to provide for such compensation by a legacy:" Grossman v. Thunder, supra.

There was not sufficient evidence to support the plaintiff's claim, and the trial judge should have sustained the defendant's first point, "Under all the evidence in this case, the jury should find for the defendant."

The judgment is reversed.