## Catasauqua National Bank *v.* Miller, Appellant.

*Promissory notes—Innocent purchaser—Fraud—Evidence—Banks and banking.*

In an action by a bank against the maker of a promissory note discounted by the bank before maturity, where the defendant shows that the note was procured from him by the payee without any consideration and by the use of false and fraudulent representations, but it is shown without contradiction by the testimony of the bank's cashier and of several of the members of its finance committee that neither the bank nor any of its officers had any knowledge of the fraud before the note was discounted, and it also appears that the defendant himself had no knowledge of the fraud until after the discount of the note, the trial court commits no error in entering judgment for plaintiff non obstante veredicto.

Argued November 19, 1914.    Appeal, No. 250, October T., 1914, by defendant, from judgment of C. P. Chester Co., January T., 1913, No. 11, for plaintiff non obstante veredicto in case of Catasauqua National Bank v. Amos E. Miller.    Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ.    Affirmed.

Assumpsit on a promissory note.    Before BROOM-ALL, J.

At the trial the jury returned a verdict for defendant. Subsequently the court entered judgment for plaintiff for $843.02, non obstante veredicto.

*Error assigned* was in entering judgment for plaintiff n. o. v.

*William Tregay,* with him *W. E. Greenwood,* for appellant.—When the establishment of a question of fact depends upon oral testimony, the credibility of the witness or witnesses is for the jury alone, and it is their exclusive province to determine whether from such testimony the fact in dispute has been established: Second

National Bank of Pittsburgh v. Hoffman, 229 Pa. 429; Dalmas v. Kemble, 215 Pa. 410; Duffy v. York Haven, Etc., Water Co., 233 Pa. 107; Reel v. Elder, 62 Pa. 308.

It is not error in the court, to submit the decision of a fact to the jury, when the evidence is all on one side; as the credibility of the witness is for the jury, and if they are not believed, it is the duty of the jury to find against the party maintaining the affirmative of the issue: Bank v. Donaldson, 6 Pa. 179; Reeper v. Greevy; 5 Pa. Superior Ct. 316; High v. Berret, 148 Pa. 261; Hall v. Vanderpool, 156 Pa. 152; Lautner v. Kann, 184 Pa. 334; Bryant v. Stillwell, 24 Pa. 314.

It is respectfully urged upon your honorable court by the appellant that under the facts in this case and the circumstances surrounding the same, all of which were brought to the attention of the jury, the case was for the jury and a binding instruction to the jury to find a verdict for the plaintiff would have been reversible error: Dalmas v. Kemble, 215 Pa. 410; Snedaker v. Munday, 55 Pa. Superior Ct. 581; Schoenfeld v. Fuhrman, 55 Pa. Superior Ct. 584; Butts v. Armor, 164 Pa. 74.

*Frank Jacobs,* with him *W. S. Harlan,* for appellee.— The lower court did not commit error in directing judgment n. o. v.: National Bank of Coatesville v. Palmer, 56 Pa. Superior Ct. 82; Louzer v. L. V. R. R. Co., 196 Pa. 610; People Nat. Bank v. Hazard, 231 Pa. 552; Meyer v. Shickler, 47 Pa. Superior Ct. 282; Schley v. R. R. Co., 227 Pa. 494; Knupp v. Brooks, 200 Pa. 494.

It would have been error on the part of the court to have refused the motion and the case should not have been submitted to the jury: Second Nat. Bank of Pittsburgh v. Hoffman, 233 Pa. 390.

Nothing but clear evidence of knowledge or notice, fraud or mala fides, can impeach the prima facie title of a holder of negotiable paper: Lancaster County Bank v. Garber, 178 Pa. 91; Second Nat. Bank v. Morgan, 165 Pa. 199; Bank v. Moore, 148 Fed. 953; Johnson Co.

Saving Bank v. Koch, 38 Pa. Superior Ct. 553; Sheppard
v. Stubbs, 19 D. R. 215.

OPINION BY HEAD, J., July 21, 1915:

The defendant, having been induced by certain false
representations, to which later reference will be made
concluded to buy certain shares of stock in a corporation
known as "Corporation Funding and Finance Com-
pany." In payment of the purchase-price of said shares
he executed and delivered to the corporation his prom-
issory negotiable note in the sum of $1,000. This was in
1911. The note in due course and before maturity was
endorsed by the payee corporation, and at its instance
and for its benefit was discounted by the plaintiff bank.
When it was about to mature, notice was given by the
bank to the defendant maker. A partial payment was
made and a new note given to the original payee for the
balance, and this transaction was repeated on several
occasions until on May 29, 1912, the defendant executed
and delivered to the Corporation Funding and Finance
Company the final note in the series, to wit, a note for
$750. This note, like those preceding it, was turned
over by the corporation to the plaintiff bank with a check
for the discount and lifted the next preceding one in the
series.

Whilst this last referred to note was maturing, the
Corporation Funding and Finance Company became
financially involved, and, upon the appointment of a
receiver and an investigation of its business, was found
to be insolvent. The defendant then refused to pay his
note at maturity on the ground that it had been ob-
tained without any consideration and by the use of
false and fraudulent representations by those interested
in selling to him the stock. On the trial he offered
evidence which would warrant a finding that he had
been so deceived and defrauded by those to whom he
delivered the note, but he offered no scrap of evidence
tending to show that the plaintiff bank, when it pur-

chased or discounted the paper, had any knowledge whatever of any infirmity in the title of the then holder. Notwithstanding the absence of any proof of this char-. acter, the terms of the Negotiable Instrument Act required the plaintiff bank to affirmatively prove that it took the note for value in due course and before maturity without any knowledge of any infirmity in the title of the payee. This burden of proof the bank proceeded to discharge by offering the testimony of its cashier and of several of the members of its finance committee. They all united in declaring that no notice or knowledge of any fraud or deception inducing the original execution of the note had ever come to the bank or any of its officers at or before the time when the note was discounted. There was not a scintilla of evidence to controvert this testimony. Corroboration of it was found in the statement of the defendant himself that even he had no knowledge whatever of the fraud until long after the time the note had been negotiated. and after he had renewed it several times and made partial payments on account of it. Under this state of facts we think the learned trial judge would have been warranted in directing a verdict for the plaintiff, and having declined so to do, he thereafter properly entered a judgment for the plaintiff notwithstanding the verdict.

As the case now stands it is not distinguishable from National Bank of Coatesville v. Palmer, 56 Pa. Superior Ct. 82. Although the question upon which that case actually turned was not precisely the same as that now urged upon us, yet its reasoning we cannot disregard. The second case of Bank v. Hoffman, 233 Pa. 390, seems to be exactly in point, and the present chief justice in the opinion in that case clearly points out why there was properly a directed verdict for the plaintiff, although in the first appeal such direction was held to be erroneous.

The verdict of a jury on a submitted question of fact must be responsive to some evidence introduced or must

rest upon a proper inference to be drawn from a failure to overcome some presumption recognized by the law. Here the bank had fully discharged the burden of proof imposed upon it by the statute. It offered the testimony of several witnesses and there was not a scintilla of evidence in contradiction of what they affirmed. Their testimony, as was said in Lonzer v. Lehigh Valley R. R. Co., 196 Pa. 610, "was not in itself improbable, was not at variance with any proved or admitted facts, or with ordinary experience, and comes from witnesses whose candor there is no apparent ground for doubting." In such cases it was declared the jury is not at liberty to indulge in a capricious belief. If they do so, it is the duty of the court to set the verdict aside. In Keiser v. Lehigh Valley R. R. Co., 212 Pa. 409, the court, affirming the doctrine of the case just previously cited, further said: "Under these circumstances the learned court below was justified in refusing to submit the question to the jury and in saying that the plaintiff had failed to establish the negligence complained of."

The great fabric of commercial business in this country rests largely upon the proposition, long recognized and everywhere accepted, that a negotiable note is "a courier without luggage," and that innocent holders for value, who take such paper in due course of business, are not to be bound or affected by any secret equities between the maker of such paper and the payee named. The statute imposes no unfair or unnecessary burden on such holders when it declares that under certain circumstances they must affirmatively prove they have had no knowledge of any infirmity in the title of the person who negotiated the instrument. But when they have discharged that burden by competent and abundant testimony of apparently reliable witnesses, and there is not even a scintilla of evidence to the contrary, it surely must be the law that a jury cannot arbitrarily and capriciously render a verdict against the whole of the evidence submitted. Where a court would be obliged to set

aside such a verdict because it rested on no foundation in the evidence, and the whole of the testimony of one party is corroborated by that of the adverse party, it may with propriety direct the action of the jury. We conclude therefore the learned judge below was right in entering a judgment for the plaintiff and the assignments of error are consequently overruled.

Judgment affirmed.