## Bitner, Appellant, *v.* Diehl.

*Promissory notes—Duress—Surety—Notice 'of defective title—Evidence.*

The general rule is that the defense of duress in an action on a promissory note is open only to the party upon whom the duress has been imposed; but a third party who has become surety for the payment of the claim may avail himself of such defense if it is shown that he signed the obligation without knowledge of the duress.

*Promissory notes—Duress—Endorsee—Notice of defective title—Case for jury.*

In an action by the endorsee of a promissory note against the maker, where the defendant sets up as a defense duress exerted upon him by the payee in securing the note, and there is no evidence that the endorsee who had purchased the note for a valuable consideration before maturity had knowledge of the duress, and

he denies on the stand that he had any such knowledge, and the payee when called by the plaintiff as a witness, states under cross-examination by the defendant that he did not inform the plaintiff of the duress when he sold the note to him, it is error for the trial judge to submit the case to the jury, and to permit a judgment on a verdict for the defendant to stand. The appellate court in reversing such a judgment cannot however enter judgment for the plaintiff, if the record does not show a motion for judgment non obstante veredicto. All that can be done is to reverse the judgment and award a venire facias de novo.

In such a case the fact that the plaintiff purchased the note at a very large discount is not sufficient, of itself, to sustain an inference that he knew that there was any infirmity in the note, or in the payee's title.

Argued Feb. 23, 1915. Appeal, No. 11, Feb. T., 1915, by plaintiff, from judgment of C. P. Clinton Co., April T., 1913, No. 130, on verdict for defendants in case of Charles A. Bitner v. Joseph D. Diehl, et al. Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ. Reversed.

Assumpsit on a promissory note. Before HALL, P. J., The note was as follows:

$1,000.00                    Lock Haven, Pa., Dec. 31, 1912.

Three months after date we promise to pay to the order of J. H. Crider at the Lock Haven Trust and Safe Deposit Co., of Lock Haven, Pa.,

One Thousand.............................Dollars without defalcation for value received.

JOSEPH D. DIEHL.<br>CHARLES BASINGER.

INDORSED

Now Feb. 5, 1913 for value received, I hereby assign, transfer and set over to Chas. A. Bitner the within note.

J. H. CRIDER.

483, (1915).]    Statement of Facts—Arguments.

The defense set up was that the note had been signed by Diehl under duress exerted upon him by Crider, and that Basinger had signed the note as surety for Diehl without knowledge of the duress.

The plaintiff purchased the note for $750.00. There was no evidence that he knew of the duress practiced on Diehl, and when on the stand denied that he had ever such knowledge. Crider was called by the plaintiff to testify to the genuineness of his signature to the endorsement. He was subjected to a cross-examination by the defendant in the course of which he stated that he did not explain to Bitner how he got the note, and that both he and his lawyer assured Bitner that it was a good and valid note.

The court submitted the case to the jury.

Verdict and judgment for defendants. Plaintiff appealed.

*Error assigned,* among others, was in refusing binding instructions for plaintiff.

*J. J. Kintner,* for appellant.—From the evidence submitted there was no disputed fact for the jury to pass upon: Second Nat. Bank v. Hoffman, 233 Pa. 390; Reeper v. Greevy, 5 Pa. Superior Ct. 316; Howie v. Lewis, 14 Pa. Superior Ct. 232; McSparran v. Neely, 91 Pa. 17; Lamb v. Burke, 132 Pa. 413; Winton v. Freeman, 102 Pa. 366; Myers v. Shickler, 47 Pa. Superior Ct. 282; Lerch Hardware Co., Ltd., v. First Nat. Bank of Columbia, 109 Pa. 240; Second Nat. Bank of Clarion v. Morgan, 165 Pa. 199.

*R. B. McCormick,* with him *H. T. Hale.*—Duress of the principal will avoid the obligation of a surety, if he is ignorant of the circumstances which rendered it voidable by the principal: Osborn v. Robbins, 36 N. Y. 365; Patterson v. Gibson, 81 Ga. 802.

The case was for the jury: Second Nat. Bank of

Pittsburgh v. Hoffman, 229 Pa. 429; Schultheis v. Sellers, 223 Pa. 513; Grange Trust Co. v. Brown, 49 Pa. Superior Ct. 274.

OPINION BY RICE, P. J., December 13, 1915:

This was an action of assumpsit on a promissory note for one thousand dollars made by the defendants to the order of J. H. Crider, and before maturity sold and transferred by him to Charles A. Bitner by writing endorsed thereon.   The defense was that as between the original parties to the note Basinger was surety for Diehl and that Diehl, the principal, gave the note under duress exerted by Crider.   "The general rule undoubtedly is that the defense of duress is open only to the party upon whom it is imposed, and that a third party who has become surety for the payment of the claim cannot avail himself of the plea unless he signed the obligation without knowledge of the duress."   MESTREZAT, J., in Fountain v. Bigham, 235 Pa. 35.   The principle upon which the surety who has signed without knowledge of the duress practiced on the principal may avail himself of the defense was clearly set forth and illustrated in Griffith v. Sitgreaves, 90 Pa. 161, and is applicable here. There was ample evidence to warrant a finding that Diehl executed the note under duress and the testimony that Basinger did not know of the duress was full and uncontradicted.   It follows that the court was right in instructing the jury that the testimony, if believed, established a good defense in favor of both defendants as against Crider, the payee.

Assuming that the title of Crider who negotiated the note was defective within the meaning of Section 55 of the Negotiable Instruments Act of 1901, the question arises whether the court erred in not instructing the jury that notwithstanding the defectiveness of Crider's title the plaintiff was a holder in due course and, therefore, entitled to recover.   The law upon the subject is thus expressed in Section 59 of the Negotiable Instruments Act:

"Every holder is deemed, prima facie, to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course." Therefore the burden was on the plaintiff to prove that he took the note before maturity, in good faith and for value and that at the time it was negotiated to him he had no notice of any infirmity in the instrument or in the title of Crider. According to the testimony of the plaintiff he paid seven hundred dollars in cash for the note and undertook to pay a bill of fifty dollars which Crider owed to a third person. The fact that he purchased the note at a very large discount was not sufficient, of itself, to sustain an inference that he knew that there was any infirmity in the note or in Crider's title. At the most, it was only a suspicious circumstance and that alone is not sufficient to impeach his good faith; Phelan v. Moss, 67 Pa. 59. The plaintiff testified explicitly that he had no information or knowledge of the facts and circumstances under which the note was given and no affirmative evidence that he had appears elsewhere in the case. But he was a deeply interested party and if his testimony stood alone though uncontradicted the court would have been bound to submit the question of his credibility to the jury: Second National Bank of Pittsburgh v. Hoffman, 229 Pa. 429. Nothing that was said or decided in that case was overruled or questioned when the case came again before the Supreme Court after a second trial. Second National Bank of Pittsburgh v. Hoffman, 233 Pa. 390. But a distinction was pointed out which, as will be shown presently, should be observed in the present case. On the first trial the only person called by the plaintiff to relieve itself of the burden upon it of showing that it had no knowledge at the time it took the note of McKee's fraud upon the defendant was its own cashier, but on the second trial the plaintiff did not rely on his testimony alone as to this. We

quote from Justice BROWN's opinion: "It conclusively appeared from the testimony of the defendant himself, and from that of McKee when on the stand as one of his witnesses, that, the bank had no knowledge whatever of what had taken place between them at the time defendant endorsed the note. The admission of the defendant was that neither he nor anyone for him had ever communicated with the bank, and McKee testified that he had never communicated to it the talk he had had with the defendant on the evening that the latter endorsed the note. It thus affirmatively appeared, from the defendant's own admission and from the testimony of McKee, one of his witnesses, that the bank had no knowledge of the latter's fraud upon the defendant, and it was, therefore, error in the court below to permit the jury to pass upon that question. It was not a disputed one after the defendant and McKee had testified." In harmony with this ruling are our decisions in Meyer v. Shickler, 47 Pa. Superior Ct. 282, and National Bank of Coatesville v. Palmer, 56 Pa. Superior Ct. 82. In the former case the title of Lissberger, the payee, who endorsed the note in suit to the plaintiff was, under the defendant's allegation of fact, defective. The court rejected the evidence offered to sustain that allegation and gave binding direction in favor of the plaintiff. The decision affirming the judgment on the verdict was put on the ground that the testimony of the plaintiff and that of Lissberger (who was called as a witness by the defendant) concurred in showing that the former had no notice or knowledge of the facts that made Lissberger's title defective and was uncontradicted; therefore, a verdict for defendant would have been contrary not only to the weight of the testimony, but to all the testimony both of plaintiff and defendant. Here, the plaintiff's case did not rest exclusively on his own testimony. It was supported by the testimony of Crider given under these circumstances: The plaintiff called Crider merely to testify to the genuineness of his signature to

the endorsement, a fact that was not in dispute. Thereupon the defendants' counsel proceeded to examine him at great length as to other matters and particularly as to his dealings with Bitner in negotiating the note to him. Under this examination the testimony was elicited that he did not explain to Bitner how he got the note and that both he and his lawyer assured Bitner it was a good and valid note. We are not to be understood as saying that it was not competent for the defendants to contradict this testimony if they could. It is sufficient to say that they did not attempt to contradict it. To summarize: there is no evidence that the plaintiff had any notice or knowledge of the alleged duress or that he had a notice or knowledge of facts from which as a prudent man he ought to have inferred that Crider's title was defective; on the contrary, all the testimony including that educed by the defendants in the manner above indicated was to the effect that he was a bona fide holder for value without notice. In Hughes v. Westmoreland Coal Company, 104 Pa. 207, it was held: "Where the defendant is improperly allowed to cross-examine the plaintiff's witness, and educe matter of defense, the jury should consider the testimony so drawn out as if the witness had been called and examined in chief, on the part of the defendant." This principle has been recognized and applied in many later cases and is applicable here. Thus viewing the testimony of Crider, the case is not distinguishable in principle from the second Hoffman case and Meyer v. Shickler, and, therefore, the plaintiff's fifteenth point (fourth assignment of error) should have been affirmed.

Motion for nonsuit was made when this appeal came on for argument, based to a large extent upon objections to the form of some of the assignments of error. It must be conceded that the form of these assignments was objectionable. But, be that as it may, in view of the exception granted by the learned trial judge to the charge and the answers to points, there is no well founded objection to the assignment which we have said must be sustained.

It is suggested in the appellant's argument that we should enter judgment in favor of the plaintiff, but that is impossible in view of the fact that the record does not show a motion for judgment n. o. v. under the Act of 1905. The judgment is reversed and a venire facias de novo is awarded.