## Porter *v.* Fronheiser, Appellant.

*Negotiable instruments—Promissory notes—Holder in due course—
Evidence—Sufficiency.*

Where the holder of a negotiable instrument undertakes to discharge the burden of proving that, when he bought the note, he had no knowledge of any infirmity therein, or in the title of the person from whom he bought it, his own testimony to that effect, being apparently candid and not opposed to any affirmative evidence that he had such knowledge, is sufficient to satisfy the burden, and warrant a finding of the necessary fact that he had taken the note without any knowledge of defects and was a bona fide holder in due course.

When such testimony is corroborated by that of the defendant himself that he had no knowledge of the fraud until after the purchase of the note by the plaintiff, there is no question for the jury, and that tribunal cannot be allowed to capriciously render a verdict against the whole of the evidence.

In such case it is not necessary to call every witness in any way connected with the purchase of the note. All the law required, under the circumstances, was that the plaintiff affirmatively prove that he purchased without knowledge of any defect, inherent in its execution and delivery. That burden was discharged when the plaintiff offered evidence from competent witnesses to support a finding of that fact.

Argued December 3, 1924.  Appeal No. 212, October T., 1924, by defendant from judgment of C. P. Berks County, December T., 1920, No. 60, in the case of J. Elmer Porter v. H. H. Fronheiser.  Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.  Affirmed.

Assumpsit on promissory note.  Before ENDLICH, P. J.

The facts are stated in the opinion of the Superior Court.

The jury rendered a verdict in favor of the defendant.  Subsequently the court entered judgment in favor of the plaintiff non obstante veredicto.  Defendant appealed.

*Error assigned* was the decree of the court.

*Cyrus G. Derr,* and with him *Walter B. Freed,* for appellant, cited: Hall v. Vanderpool, 156 Pa. 152; Second National Bank v. Hoffman, 233 Pa. 390; Meyer v. Shickler, 47 Pa. Superior Court 282; Catasauqua National Bank v. Miller, 60 Pa. Superior Court 220; St. Clair v. Hastings, 74 Pa. Superior Court 229; McKinley v. Wainstein, 74 Pa. Superior Court 482.

*C. H. Ruhl,* and with him *Jesse R. Evans* and *Thomas K. Leidy,* for appellee.

OPINION BY GAWTHROP, J., July 9, 1925:

Assumpsit on a promissory note for $1,000.00 made by defendant to the order of himself and endorsed to Sides and Keon, who before maturity sold the note to plaintiff and transferred it by endorsement. The allegation was that plaintiff became the endorsee in due course before the maturity of the note and for value paid. The defense was that Sides and Keon procured the note from the maker by false and fraudulent representations. The consideration for which defendant gave the note was a number of shares of stock in a corporation known as "The Franklin Operating Company." The evidence offered by defendant at the trial warranted a finding that Sides and Keon, who sold the stock to defendant, procured the note by false and fraudulent representations. Thus the title of Sides and Keon was defective within the meaning of the Negotiable Instruments Law of May 16, 1901, P. L. 194, and that according to section 59 of the act, cast on plaintiff the burden of proving that he acquired the title as holder in due course, that is, that he took the note for value before maturity and without any knowledge of any infirmity in the instrument or in the title of Sides and Keon (Catasauqua National Bank v. Miller, 60 Pa. Superior Ct. 220; St. Clair v. Hastings, 74 Pa. Superior Ct. 229).

This burden plaintiff undertook to meet by narrating

all the circumstances attending his purchase of the note from Sides within a few days of its date and before maturity, for $935.00, and by his own testimony that he had no knowledge of the circumstances under which Sides and Keon procured it from the maker, nor of any infirmity therein. No affirmative evidence that he had such knowledge appears elsewhere in the case. Plaintiff is a physician and surgeon. The transaction with reference to his purchase of the note took place in his office in Pottstown. A patient was present at the time, whose name he could not recall. There was nothing to impeach his testimony and it bears every indication of candor. The fact that he purchased the note at a discount of $65.00 was not sufficient of itself to sustain an inference that he knew there was any infirmity in the note or in the title of Sides and Keon (Bitner v. Diehl, 61 Pa. Superior Ct. 483, 487). Plaintiff was a deeply interested witness and if his testimony stood alone, though uncontradicted, its credibility would have been for the jury: Second National Bank v. Hoffman, 229 Pa. 429. But, as was pointed out in the second trial of Bank v. Hoffman, 233 Pa. 390, and in Bitner v. Diehl, supra, there is a controlling difference when it also affirmatively appears from the testimony of defendant that he had never communicated to plaintiff the fact that the note was procured from him by fraud, or any facts from which a prudent person ought to have inferred there was an original fraudulent procurement of the note. In the present case defendant had no knowledge of the fraud until after plaintiff purchased the note. He frankly admitted that he did not stop payment on it until more than two months after plaintiff bought it, and that he did not then know who owned it.

The case is very similar to National Bank of Coatesville v. Palmer, 56 Pa. Superior Ct. 82, Catasauqua National Bank v. Miller, supra, and the second Hoffman case. In the Palmer case the plaintiff bank discounted

a note for the payee and, when it brought suit against the maker, was met by the defense that the payee's title was defective because it procured the note by fraud. The bank undertook to meet the burden cast upon it by calling its cashier who was authorized to discount commercial paper and who testified that he had no knowledge of any fraud or other wrong in the transaction by which the payee secured the note. It further appeared that under the regulations of the bank such discounts by its cashier were submitted to the board of directors for approval. Two of the six directors who met almost immediately following the discount and approved it were called as witnesses and testified that when the note came before them they approved the act of the cashier and had no knowledge or notice of anything affecting the integrity of the note in the hands of the payee. The remaining directors were not called. The only other evidence tending to prove that plaintiff had no notice of any infirmity in the instrument or defect in the title of the payee was the defendant's testimony that he had no knowledge of the fraud perpetrated on him by the payee until a considerable time after the plaintiff bank discounted the note. A verdict was directed for the plaintiff in the court below and the judgment was affirmed. The contention of the appellant was that the bank had not fully discharged the burden cast upon it, because it had not called every officer connected with the bank through whom some knowledge of the defect in the payee's title to the note might have been brought home to the bank. We held that it was not necessary that all of such officers should be called and that when, in addition to the testimony of the officers who testified for the plaintiff, "it further affirmatively appeared from the testimony of the defendant himself that even he had no knowledge of the fraud until after the bank had paid out its money in purchase of the note, there is surely but little left to support the contention of the

appellant,'' and that the plaintiff had fully discharged the burden of proof imposed upon it by the law and with the corroboration of that proof by the defendant himself there was no question for the jury.

The same question arose in the Miller case where the only corroboration of the testimony of the cashier and several members of the finance committee of the bank, that they had no knowledge of any fraud in inducing the original execution of the note, was found in "the statement of the defendant himself that even he had no knowledge whatever of the fraud until long after the time the note had been negotiated.'' It was held that judgment for the plaintiff notwithstanding the verdict was proper.

In the second Hoffman case, as in the present case, the plaintiff bank undertook to meet the burden cast upon it by calling but one witness, its cashier. The corroboration of that witness's testimony, which was held to justify binding instructions for plaintiff, is found in the testimony of the defendant and his witness, McKee, who practiced the fraud upon the defendant, to the effect that they never communicated to the plaintiff the facts of the fraud.

The rule of law clearly deducible from these cases and others following them is that when, as here, the holder of a negotiable promissory note undertakes to discharge the burden of proving that when he bought the note he had no knowledge of any infirmity therein, or in the title of the person from whom he bought it, his own testimony to that effect, if it is apparently candid and is not opposed to any affirmative evidence in the case that he had such knowledge, is sufficient to satisfy the burden and to warrant and support a finding of the necessary fact that the holder had taken the note without knowledge of any defect in it; and, if and when that testimony is corroborated by that of the defendant himself that he had no knowledge of the fraud until after the plaintiff bought the note, no ques-

tion remains for submission to the jury and that tribunal cannot be allowed to capriciously render a verdict against the whole of the evidence.

We are not impressed by the contention of the able counsel for defendant that plaintiff did not sufficiently account for his failure to call the patient who was in his office when Sides offered to sell him the note. We are not satisfied that there is anything strange or suspicious in plaintiff's statement that he did not recall who the patient was; nor that, even if plaintiff remembered who the patient was and he could have produced him as a witness, any unfavorable inference could be drawn by the jury from the failure to call him. In the Palmer case, supra, the sole contention in this court was that the plaintiff did not fully discharge the burden cast upon it by law because it had not called every officer in any way connected with the administration of its affairs, through whom some knowledge of the defect in the delivery of the note might have been brought home to the bank. We held that the contention was untenable; that all that the law required under the circumstances was that the plaintiff affirmatively prove that it took the note without knowledge of any defect inherent to its execution or delivery; and that the burden was discharged when it offered evidence from competent witnesses to support a finding of that fact. We conclude, therefore, that the entry of judgment notwithstanding the verdict was right, and the assignments of error are overruled.

Judgment affirmed.