## Gordon, Secretary of Banking, *v.* Mapel, Appellant.

Argued March 29, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY and LINN, JJ.

*E. C. Higbee,* of *Higbee, Matthews & Lewellyn,* for appellant.—The evidence in appellant's favor on this point

being more than a scintilla, the court cannot decide the weight of the evidence, and although it might be constrained because of its view in that behalf to grant a new trial, it cannot enter judgment: Fuher v. Coal Co., 272 Pa. 14; Hardy v. Fire Ins. Assn., 293 Pa. 9; Lincoln v. Christian, 94 Pa. Superior Ct. 145.

*J. W. Ray*, of *Shelby, Hackney & Ray*, with him *William A. Schnader*, Attorney General, *Shippen Lewis*, Special Deputy Attorney General, and *Harold Hanmer*, for appellee.—The records of the bank clearly establish that the notes in suit were discounted within a reasonable time and there was no question for submission to the jury in regard thereto: Walters v. Bridge Co., 234 Pa. 7; Berkowitz v. Mfg. Co., 68 Pa. Superior Ct. 559.

OPINION BY MR. JUSTICE MAXEY, April 10, 1933:

This is an appeal by defendant from judgment n. o. v. entered in favor of plaintiff by the Court of Common Pleas of Fayette County. Action was instituted in assumpsit to recover $2,472 and interest from February 1, 1926, on two notes: one being dated July 14, 1923, in the sum of $1,000 payable to the order of the Peoples Bank of Greensboro (hereinafter referred to as "the bank"), and the other being dated October 24, 1923, in the sum of $1,472, and payable to the order of the bank. Each note was payable on demand. Both notes were delivered to one H. M. Conn, who discounted the notes at the bank in July and October, 1923, and received credit for the proceeds. Interest was paid on the notes by Conn to February 1, 1926. The defense alleged that the notes were signed by appellant and delivered by him to his nephew, Conn, for the purpose of enabling him to deposit the notes with the bank and secure possession of certain bonds of Conn then held by the bank as collateral for other obligations, and the arrangement was that, after Conn had exchanged the bonds for stock in the same company, the stock was to be delivered to the

bank and the notes executed by the appellant were to be returned to Conn. The bank claimed that it had no notice of the alleged agreement between Conn and the appellant and that it in good faith discounted the notes and paid the proceeds thereof to the former.

Appellant did not communicate to the bank or any of its officers or directors the fact that he claimed the notes in question were executed by him and delivered to Conn to be used for the restricted purpose stated. Appellant testified that the first time he knew the bank claimed to hold the notes was in 1927. Appellant then wrote the cashier of the bank about the matter and the cashier replied in a letter dated February 16, 1927, stating that "Conn discounted those notes in November of 1925 paying interest to February 1, 1926, since which time they have been overdue."

The bank in meeting its burden of proof at the trial introduced its records consisting of deposit slips and register sheets to show that the notes were not discounted on the date named by the cashier in the above letter, but that the $1,000 note was discounted on July 17, 1923, three days after its date, and the note for $1,472 was discounted on October 25, 1923, one day after its date. The cashier stated on the witness stand that the $1,000 note was discounted on July 17, 1923, and that the $1,472 note was discounted on October 25, 1923. He was neither examined nor cross-examined as to the above statement in his letter of February 16, 1927. The cashier also stated that Conn received credit for the $1,000 note on July 17, 1923, and for the $1,472 note on October 25, 1923. Plaintiff offered in evidence a deposit slip dated July 17, 1923, showing credit to Harold M. Conn for $979.80, setting forth that the deposit was the proceeds of a $1,000 note less the discount, and revenue amounting to $20.20. Plaintiff also offered in evidence a deposit slip to H. M. Conn, dated October 25, 1923, for the proceeds of a note of $1,472. The "Discount Register" of the bank corroborated these deposit slips. The

items in this register ran consecutively and numerically and the entries made as to the discounting of the notes in question were made in the usual course of business during the year 1923. Samuel Black, president of the bank, testified that the appellant in the spring of 1926 admitted to him the existence of the notes "and asked for a continuation of the time. It seems as though Mr. Kramer [the cashier of the bank] told him he would prosecute or try to collect them if he didn't take care of the interest; they wanted them paid off." The cashier also testified that when he accepted these notes he had no knowledge of any understanding or agreement between the defendant, Mapel, and Harold M. Conn, regarding these notes having been put up in lieu of certain bonds that were held by the bank. All the evidence in behalf of the plaintiff was to the effect that these notes were discounted in the due course of business.

Was the bank a holder in due course of these notes? That was the issue. Plaintiff asked for binding instructions. They were refused. The case went to the jury. The verdict was for the defendant. Plaintiff moved for judgment n. o. v. The court entered judgment n. o. v. in favor of the plaintiff against the defendant in the sum of $2,400 with interest from February 1, 1926.

The Negotiable Instruments Act of May 16, 1901, P. L. 194, chapter I, article IV, section 52, 56 P. S., page 161, says: "A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face. (2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact. (3) That he took it in good faith and for value. (4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." Chapter I, article IV, section 53, of the same act, 56 P. S., page 166, says: "Where an instrument payable on demand is negotiated an unreasonable length of time

after its issue, the holder is not deemed a holder in due course."

The uncontradicted evidence was so conclusive that the bank had no notice of any infirmities in the notes or defects in the title of the person negotiating them that the court was justified in so declaring as a matter of law. See South Side Bank of Scranton v. Raine, 306 Pa. 561, 160 A. 446; Second Nat. Bank v. Hoffman, 233 Pa. 390, 82 A. 463; Houston v. McCaslin, 65 Pa. Superior Ct. 28; Catasauqua Nat. Bank v. Miller, 60 Pa. Superior Ct. 220; Nat. Bank of Coatesville v. Palmer, 56 Pa. Superior Ct. 82. In Porter v. Fronheiser, 86 Pa. Superior Ct. 354, which was an action on a negotiable instrument, the Superior Court held that "when the holder of a negotiable promissory note undertakes to discharge the burden of proving that when he bought the note he had no knowledge of any infirmity therein, or in the title of the person from whom he bought it, his own testimony to that effect, if it is apparently candid and is not opposed to any affirmative evidence in the case that he had such knowledge, is sufficient to satisfy the burden and to warrant and support a finding of the necessary fact that the holder had taken the note without knowledge of any defect in it; and, if and when that testimony is corroborated by that of the defendant himself that he had no knowledge of the fraud until after the plaintiff bought the note, no question remains for submission to the jury and that tribunal cannot be allowed to capriciously render a verdict against the whole of the evidence."

The court below rightly held that the evidence adduced in behalf of the plaintiff proved conclusively that the discounting of these notes occurred within a reasonable length of time after their execution. The only evidence to the contrary was the letter of the cashier dated February 16, 1927, concerning which appellant's counsel at the trial did not even examine or cross-examine the cashier, and also appellant's testimony that some time in

the year 1928 he said to the cashier: "How did you come to discount these notes in 1925, two years after they were dated?" He stated that the cashier replied: "Connie got into a jam and we had to discount them to take care of some of his other obligations." This conversation was denied by the cashier. Taking the testimony in behalf of the appellant at its face value, it is not sufficient to overcome the written records of the bank and the endorsement of interest payments on the back of the notes, beginning July 14, 1923, on the $1,000 note and beginning November 27, 1923, on the $1,472 note. The cases cited by appellant on the evidentiary value of the letter are not decisive here. For example, Hardy v. Millers Mutual Fire Ins. Assn., 293 Pa. 9, 141 A. 623, simply holds that in issues turning on *oral* proof, a litigant's case, supported by more than a scintilla of evidence, must go to the jury regardless of the strength of the opposing testimony. There was nothing in the testimony from which the jury could reasonably find that the notes were discounted any later than the dates fixed by plaintiff. To submit this case to the jurors was merely to give them an opportunity to indulge in a capricious disbelief of plaintiff's conclusive evidence. See Macneir v. Wallace, 252 Pa. 323, 97 A. 501.

There is also authority for the proposition that what is a reasonable time for the negotiation of a note payable on demand is a question of law. In Barbour et al. v. Fullerton, 36 Pa. 105, this court said in an opinion by Mr. Justice READ: "......As a general rule, where all the facts are entirely undisputed, what is a reasonable time seems to be a question of law," citing Brenzer v. Wightman, 7 W. & S. 264; Lancaster Bank v. Woodward, 6 Harris 362. Justice READ quoted Mr. Baron Parke, as follows: "A note payable on demand is not to be considered as overdue without some evidence of payment having been demanded and refused, although it be several years old, and no interest has been paid on it. ...... A promissory note payable on demand is in-

tended to be a continuing security; it is quite unlike a check, which is intended to be presented speedily." Justice READ continued: "This is undoubtedly the law of England, as laid down by the latest and most approved English text writers: Byles on Bills, 7th ed., 145, 179, 180; Chitty on Bills, 10th ed., 1859, 155; Brooks v. Mitchell, 9 M. & W. 15 and American note." Chancellor KENT is also quoted by Justice READ as follows: "But it has been a question, when a note payable on demand is to be deemed a note out of time, so as to subject the endorsee, upon a subsequent negotiation of it, to the operation of the rule. When the facts and circumstances are ascertained, the reasonableness of time is a matter of law, and every case will depend upon its special circumstances."

The judgment is affirmed.